UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHARLES A. WEBB,

                Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security

                Defendants.

Case No. 3:16-cv-05985-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION FOR PAYMENT OF BENEFITS

      Plaintiff has brought this matter for judicial review of defendant's denial of his application for supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court finds that defendant's decision to deny benefits should be reversed and that this matter should be remanded for an award of benefits.

FACTUAL AND PROCEDURAL HISTORY

      On September 6, 2013, Plaintiff filed an application for SSI benefits, alleging he became disabled beginning March 1, 2013. Dkt. 12, Administrative Record (AR) 21. That application was denied on initial administrative review and on reconsideration. *Id.* A hearing was held before an administrative law judge (ALJ), at which Plaintiff appeared and testified, as did a lay witness and a vocational expert. AR 79-114.

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION FOR PAYMENT OF BENEFITS - 1

1    In a decision dated May 1, 2015, the ALJ found that Plaintiff could perform other work
2    existing in significant numbers in the national economy and therefore that he was not disabled.
3    AR 21-32. Plaintiff's request for review was denied by the Appeals Council on September 29,
4    2016, making the ALJ's decision the final decision of the Commissioner, which Plaintiff then
5    appealed in a complaint filed with this Court on December 6, 2016. AR 1; Dkt. 3; 20 C.F.R. §
6    416.1481.
7    Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, or in
8    the alternative for further administrative proceedings, arguing the ALJ erred: (1) in evaluating
9    the medical opinion evidence in the record and in discounting Plaintiff's credibility concerning
10   his pancreatitis-related flares; (2) in rejecting the lay witness evidence in the record; and (3) in
11   failing to properly develop the record concerning Plaintiff's mental impairments. For the reasons
12   set forth below, the Court agrees that the ALJ committed reversible error in regard to issues (1)
13   and (2), and further finds that such errors warrant remand for an award of benefits.

DISCUSSION

15   The Commissioner's determination that a claimant is not disabled must be upheld if the
16   "proper legal standards" have been applied, and the "substantial evidence in the record as a
17   whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986);
18   *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v.*
19   *Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). "A decision supported by substantial
20   evidence nevertheless will be set aside if the proper legal standards were not applied in weighing
21   the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of*
22   *Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such
23   relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson*, 359 F.3d at 1193. Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I.     The ALJ's Evaluation of the Medical Opinion Evidence

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences

1  "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may

2  draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881

3  F.2d 747, 755, (9th Cir. 1989).

4        The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

5  opinion of either a treating or examining physician. *Trevizo v. Berryhill*, No. 15-16277, __ F.3d

6  __, 2017 WL 2925434, at *7 (9th Cir. July 10, 2017). Even when a treating or examining

7  physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific

8  and legitimate reasons that are supported by substantial evidence." *Id*. (quoting *Ryan v. Comm'r*

9  *of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). However, the ALJ "need not discuss *all*

10 evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393,

11 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain

12 why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d

13 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

14       In general, more weight is given to a treating physician's opinion than to the opinions of

15 those who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). On

16 the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is

17 brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole."

18 *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v.*

19 *Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th

20 Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a

21 nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may

22 constitute substantial evidence if "it is consistent with other independent evidence in the record."

23 *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

24

25

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION FOR PAYMENT OF BENEFITS - 4

A.  Dr. Nam

In March 2015, Plaintiff's treating physician, Charles Nam, M.D., completed a physical residual functional capacity questionnaire, diagnosing Plaintiff with – among other conditions – chronic pancreatitis with intermittent flares. AR 850. Dr. Nam noted that Plaintiff "develops intermittent [n]ausea [and] vomiting and severe epigastric abdominal pain, sometimes leading to hospitalization." *Id.* Dr. Nam opined that Plaintiff would need to take unscheduled breaks "[c]onstantly if he is having pain or nausea/vomiting," and that he would need to rest until those symptoms subside, "which could be days." AR 852. Dr. Nam further opined that Plaintiff would likely miss more than four days of work per month due to his impairments. AR 853.

The ALJ gave only gave "[s]ome weight" to Dr. Nam's opinion concerning the need for constant unscheduled breaks, stating it was inconsistent with Plaintiff's treatment record, "which indicated only intermittent flares of [Plaintiff's] pancreatitis and their good response to medical intervention." AR 30. Plaintiff argues the ALJ's findings here were both inaccurate and lacked substantial evidentiary support in the record. Plaintiff further asserts the ALJ erred as well in failing to address Dr. Nam's opinion regarding missing four or more days of work per month. The Court agrees the ALJ so erred.

First, as Plaintiff points out, Dr. Nam did not actually opine that he would need constant unscheduled breaks, but only that he would need them *if* he was having pain or nausea/vomiting. Second, contrary to the ALJ's characterization of Plaintiff's flares of pancreatitis as being merely "intermittent" in nature, again as Plaintiff points out the record shows they occurred on an almost monthly basis at times, lasting up to several days at a time. *See* AR 295, 465, 512, 517, 522, 528, 614, 685, 701, 708, 712, 727, 732, 738, 744, 749, 759, 785, 800, 1010, 1037-38, 1054-55, 1072, 1099, 1158, 1173, 1192, 1197, 1265, 1273, 1311. Indeed, in mid-July, 2015, Dr. Nam reported that Plaintiff "[u]sually has [a] severe exacerbation up[]to a week almost every month." AR

1054. While not all of Plaintiff's exacerbations resulted in a visit to the emergency room, he consistently reported experiencing significant symptoms of pain and nausea/vomiting, lasting from half a day again up to several days in length. *See id.*

The majority of the above treatment records tracking Plaintiff's exacerbations came from Dr. Nam himself, and therefore his opinion regarding the intensity and frequency of those flares and their potential impact on Plaintiff's ability to function is well-supported. Nor does the rest of the treatment record contradict Dr. Nam's opinion in any meaningful way. The recording of the intensity and frequency of Plaintiff's reported flares also support Dr. Nam's opinion that Plaintiff would miss more than four days of work per month on average. As noted above, the ALJ failed to address this portion of Dr. Nam's opinion. That alone constitutes reversible error. But even if the ALJ had addressed that opinion, again the evidence in the record supports it, and accordingly the ALJ's determination here cannot be upheld.

      B.     <u>PAC Bilan and Dr. Kim</u>

Certified physician's Assistant (PAC) Yuri Bilan completed a physical functional evaluation form based on an evaluation performed in December 2013. AR 681-83. The findings contained in that form were affirmed by Albert Kim, M.D. AR 683. PAC Bilan found Plaintiff's moderate to marked chronic pancreatitis caused him to be "[u]nable to meet the demands of sedentary work." *Id.* The ALJ rejected that opinion on the basis that it did not contain "specific functional findings" or explain "the objective basis for the opinion." AR 30. In addition, the ALJ found "the treatment notes [were] not consistent with the limitations [the two medical sources] assessed." *Id.*

Plaintiff argues these were not valid bases for rejecting the opinion of Dr. Kim and PAC Bilan. However, while as discussed above the evidence in the record concerning Plaintiff's flares certainly could support a finding of functional compromise that rises to the level of an inability

to perform even sedentary work, as the ALJ correctly notes neither Dr. Kim nor PAC Bilan gave any indication as to the objective basis for their opinion. Thus, although Dr. Kim's and PAC Bilan's ultimate conclusion regarding Plaintiff's ability to work certainly may be consistent with Dr. Nam's opinion regarding Plaintiff's decreased functionality, the ALJ nevertheless offered valid reasons for rejecting it. *See Batson*, 359 F.3d at 1195 (an ALJ need not accept a medical source's opinion if it is inadequately supported by clinical findings).

C.  Dr. Staley

The ALJ gave "[g]reat weight" to the opinion of state agency non-examining physician, Norman Staley, M.D., who opined in late March 2014, that Plaintiff could perform a modified range of light work. AR 29, 161-62. The ALJ did so because he found that opinion to be "consistent with the objective findings in the medical record as well as [Plaintiff's] reported activities." AR 29. Plaintiff argues the ALJ erred in giving Dr. Staley's opinion great weight, noting that Dr. Staley had only a limited view of the record, which reveals almost monthly flares lasting up to several days at a time. The Court agrees.

Dr. Stalely observed that there were no hospitalizations for Plaintiff's pancreatitis flares during the year prior to March 2014. *See* AR 158. But the record shows Plaintiff still experienced significant exacerbations during that period on a fairly regular basis during, even if none of them resulted in any actual hospitalizations. *See* AR 512, 517, 522, 528, 614. Further, Mr. Webb was hospitalized in February or March 2014. *See* AR 685. Those exacerbations continued during the more than two years following Dr. Staley's opinion, without any apparent decrease in frequency or severity. *See* AR 701, 708, 712, 732, 738, 744, 749, 759, 785, 800, 1010, 1037-38, 1054-55, 1099, 1173-74, 1192, 1273, 1311.

Plaintiff's exacerbations increased, resulting in at least two visits to the hospital. *See* AR 727, 1072, 1158, 1197. To the extent Dr. Staley's opinion is inconsistent with that of Dr. Nam,

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION FOR PAYMENT OF BENEFITS - 7

furthermore, a non-examining physician's opinion may constitute substantial evidence only if "it is consistent with other independent evidence in the record." *Lester*, 81 F.3d at 830-31; *Tonapetyan*, 242 F.3d at 1149. The weight of the medical evidence in the record supports Dr. Nam's findings, and not those of Dr. Staley. Lastly, as discussed below, the evidence of Plaintiff's reported activities does not conflict with his allegations of disabling limitations. Accordingly, this too was not a specific or legitimate reason to give greater weight to Dr. Staley's opinion.

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. *Sample*, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. Even if the reasons for discrediting a claimant's testimony are properly discounted, that does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION FOR PAYMENT OF BENEFITS - 8

1  symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273,
2  1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of
3  physicians and other third parties regarding the nature, onset, duration, and frequency of
4  symptoms. *Id.*

5  In addressing Plaintiff's credibility, the ALJ noted that Plaintiff alleged he was unable to
6  work primarily due to complications related to his pancreatitis and diabetes, and that he testified
7  that he "experiences pain and nausea that comes and goes, but [that] at least once per month [he]
8  experiences severe abdominal pains," and that "during his flares he experiences severe pain and
9  is bedridden." AR 27-28; *see also* AR 93-97, 101-02. The ALJ went on to find, however, that the
10 medical record did not support the severity of Plaintiff's claimed symptoms. This can be a valid
11 basis for finding a claimant to be less than fully credible *See Regennitter v. Comm'r of Soc. Sec.*
12 *Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). But as discussed above, the weight of the medical
13 evidence actually supports Plaintiff's allegations concerning his pancreatitis, and therefore this
14 was not a proper reason for discounting his credibility.

15 The ALJ also pointed to Plaintiff's reported activities of daily living:

> . . . The record indicated that the claimant is able to live an independent lifestyle, he can drive, has no problem with personal care, can perform household chores such as laundry, taking care of his cat and helping to care for his grandmother. The claimant is also able to engage in activities such as painting, sculpting, managing a band and playing baseball. The record further indicated that the claimant is able to socialize, maintain friendships and got [sic] to public places such as the tavern and the grocery store without difficulty. These activities indicate a higher level of function than that alleged by the claimant.

21 AR 28-29 (internal citations omitted). This too was not a valid basis for discounting Plaintiff's
22 credibility. First, the record fails to demonstrate Plaintiff has engaged in these activities either at
23 a frequency or to an extent to indicate he "is able to spend a substantial part of his or her day

1  performing household chores or other activities that are transferable to a work setting." *Smolen*,

2  80 F.3d at 1284 n.7; *see* AR 89-90, 103-06, 271, 279, 286-87, 607. Second, as Plaintiff points out

3  – and as the record reflects – his primary complaint is that during those few days a month when

4  he experiences a flare in his symptoms, he is essentially bed-ridden and therefore cannot engage

5  in the above activities, let alone to the extent the ALJ suggests.

6      A third reason the ALJ offered for discounting Plaintiff's credibility are inconsistencies

7  the ALJ found in the record concerning Plaintiff's reported alcohol use. Specifically, the ALJ

8  pointed to one treatment record from October 2012, where a treating medical source expressed

9  concern about Plaintiff's alcohol use and felt he was being evasive about his actual use. AR 29.

10 But as Plaintiff again points out, the ALJ's characterization of this encounter does not accurately

11 reflect the record. Nor does it suggest evasiveness on Plaintiff's part.

12     The medical source in question, Madiha Khan, M.D., commented during one hospital

13 visit that Plaintiff "states that he has been sober for over 1 year," but that "[o]n my admission

14 history and physical, it is documented that he still will have an occasional beer." AR 327; *see*

15 *also* AR 332 ("Again, he admits to drinking occasional beer."). Dr. Khan went on to note that

16 Plaintiff also stated at the time that "he misunderstood [her] and swears that that he has not had a

17 drink in over 1 year." AR 332. Two weeks later, Plaintiff reported to another health care provider

18 that he was "upset that the MD in the hospital stated that he had been drinking, which he states

19 he has not been and in fact has not had an alcoholic drink in over a year." AR 575. Then, at the

20 hearing, Plaintiff reiterated that he "never drank heavily" and that he believed the incident was a

21 misunderstanding. AR 98-99.

22     The ALJ did not at all discuss the possibility that the report of drinking was not an effort

23 on the part of Plaintiff to be evasive, but rather a misunderstanding. Nor does the testimonial and

24

25

other record evidence concerning this incident set forth above indicate to any degree of reliability evasiveness regarding alcohol use. At the very least, Plaintiff has a plausible explanation for the discrepancy in the record, that it was a misunderstanding. The ALJ provided other reasons for finding Plaintiff to be not fully credible, but none of those stated reasons relate to Plaintiff's veracity concerning the flares and/or exacerbations he experiences from his pancreatitis. *See* AR 27-28. As such, the ALJ's determination that Plaintiff lacked credibility regarding his symptoms and limitations stemming from that condition is unsupported.

III.   The ALJ's Evaluation of the Lay Witness Evidence

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

Plaintiff's sister testified at the hearing that Plaintiff "has some days [where] he's very functionable [sic] and able to help," and that "there are some days where he is in excruciating pain." AR 105-06. She went on to testify that "at least once a week" Plaintiff cannot function, and that there are "sometimes where he's three and four days severely bad; can't even come upstairs for meals." AR 106. The ALJ did not address this lay witness testimony at all in his decision. In light of the requirement that an ALJ expressly consider lay witness evidence, the ALJ's failure to do so here committed reversible error. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (lay testimony is competent evidence and cannot be disregarded without comment).

1    The Commissioner argues the ALJ's error in failing to "not thoroughly discuss" the lay witness evidence is harmless error, because that testimony mirrored Plaintiff's, which the ALJ did discuss and discount. Dkt. 17, pp. 15-16 (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)). Unlike the situation in *Valentine* the ALJ in this case did not mention the lay witness testimony. And as just discussed, the ALJ's reasons for finding that Plaintiff lacked credibility concerning his pancreatitis-related flares themselves were unsupported by the weight of the evidence in the record.

IV.     Remand for An Award of Benefits

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). In this case, because all of the *Smolen* factors have been met, remand for an award of benefits is warranted.

1    As discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Dr.
2  Nam's opinion that Plaintiff would need to take unscheduled breaks constantly when having pain
3  or nausea/vomiting, that he would need to rest until his symptoms subsided, which could be
4  days, and that he would likely miss more than four days of work per month. AR 852-53. The
5  ALJ also did not provide legally sufficient reasons for discounting Plaintiff's claims that he was
6  unable to work primarily due to complications related to his pancreatitis, that at least once per
7  month he experiences severe abdominal pains, and that during his flares he is bedridden. AR 27-
8  28, 93-97, 101-02. Nor did the ALJ even mention or provide any reasoning concerning the lay
9  witness testimony that Plaintiff has some days where he is in excruciating pain, that at least once
10 a week he cannot function, and that there are times where there are three to four days where he is
11 "severely bad." AR 105-06.

12   There are no outstanding issues that must be resolved before a determination of disability
13 can be made. Where the ALJ has failed "to provide adequate reasons for rejecting the opinion of
14 a treating or examining physician," that opinion generally is credited "as a matter of law." *Lester*,
15 81 F.3d at 834 (citation omitted). Similarly, where an ALJ improperly rejects the claimant's
16 testimony, "and the claimant would be disabled if his testimony were credited," remand will not
17 be remanded "solely to allow the ALJ to make specific findings regarding that testimony." *Id.*
18 On the other hand, remand for further proceedings is appropriate "when, even though all
19 conditions of the [*Smolen*] credit-as-true rule are satisfied, an evaluation of the record as a whole
20 creates serious doubt that a claimant is, in fact, disabled." *Garrison v. Colvin*, 759 F.3d 995,
21 1021 (9th Cir. 2014).

22   The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's
23 treating physician is given 'controlling weight' so long as it 'is well-supported by medically

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION FOR PAYMENT OF BENEFITS - 13

1  acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other

2  substantial evidence in [the claimant's] case record." *Trevizo v. Berryhill*, --- F.3d ---, 2017 WL

3  2925434, at *7 (9th Cir. 2017) (quoting 20 C.F.R. § 404,1527(c)(2)). As discussed above, Dr.

4  Nam's opinion not only is supported by his own treatment notes, but by the majority of those in

5  the record from other medical sources. In addition, while Dr. Nam's opinion is contradicted by

6  that from Dr. Staley, Dr. Staley's opinion is not consistent with other independent evidence in

7  the record and thus cannot itself be deemed to constitute "substantial" evidence that is

8  inconsistent with Dr. Nam's opinion. Dr. Nam's opinion, furthermore, is consistent with both

9  Plaintiff's testimony and self-reporting concerning the frequency and severity of his pancreatitis

10 flares and the testimony of Plaintiff's sister concerning their impact on his functioning.

11  Based on the vocational expert's testimony, it is clear from the record that the ALJ would

12 be required to find Plaintiff disabled were such evidence credited. At the hearing, the vocational

13 expert testified that unscheduled work absences of two or more a month would conflict with the

14 ability to maintain employment. AR 111. The vocational expert further testified that unscheduled

15 breaks beyond those normally allowed would likely preclude the ability to maintain employment

16 as well. *Id.* In light of this testimony, as well as the opinion evidence from Dr. Nam and the

17 testimony of Plaintiff and his sister, the record establishes that Plaintiff would likely have more

18 than two unscheduled absences a month and/or need to take unscheduled breaks beyond those

19 normally allowed, and therefore that he is entitled to a finding of disability and an award of

20 benefits.

## CONCLUSION

22  Based on the foregoing discussion, the Court finds the ALJ improperly determined Mr.

23 Webb to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this

1 matter is REMANDED for an award of benefits.

2     Dated this 27th day of July, 2017.

*[signature: Theresa L. Fricke]*

Theresa L. Fricke
United States Magistrate Judge

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION FOR PAYMENT OF BENEFITS - 15